| | |
|---|---|
| John Baccus, # 187393, *aka John Roosevelt Baccus*, | ) C/A No. 9:12-2440-DCN-BM |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **Report and Recommendation** |
| | ) |
| Chris Florian; | ) |
| Jordan Moore; | ) |
| William P. Byars, Jr.; | ) |
| NC Merchant; | ) |
| NFN Davis; | ) |
| Larry Cartledge; | ) |
| NFN Claytor; | ) |
| NFN Maudy; | ) |
| William K. Sutter; | ) |
| Nikki R. Haley; | ) |
| Cheron M. Hess; | ) |
| Greenville County Sheriffs Office, *Civil Division*; | ) |
| Paul B. Wickensimer, *Greenville Co. Clerk of Court*; | ) |
| Gwendolyn O. Chiles, *Office of the Clerk*; | ) |
| Judge William P. Keesley; | ) |
| Steven M. Pruitt, *SC Adm. Law Court*; | ) |
| Judge Philip Lenske; | ) |
| Honorable R. Knox Mahon, | ) |
| | ) |
| | ) |
| Defendants. | ) |

---

## *Background of this Case*

Plaintiff is an inmate at the Perry Correctional Institution.[1]  In 2003, in the Court of

General Sessions for Marion County, Plaintiff was convicted, in a jury trial, of murder and first-

---

[1]Plaintiff is a well-known and frequent filer of litigation in this Court, this being his eighteenth case filed since 2002.



degree burglary. The convictions arose out of the murder of Plaintiff's former girlfriend, Brenda Kay Godbolt, on November 14, 1999. Plaintiff was sentenced to life in prison on the murder charge and to a concurrent life term on the burglary charge. The Supreme Court of South Carolina affirmed on direct appeal and the Supreme Court of the United States denied discretionary appellate review. *See State v. Baccus*, 367 S.C. 41, 625 S.E.2d 216 (2006), *cert. denied, Baccus v. South Carolina*, 555 U.S. 1074 (2008).

In the above-captioned case, which is styled as an "EMERGENCY CIVIL RIGHTS ACTION," Plaintiff brings suit against various state and federal officials. Defendant Florian is Deputy General Counsel for the South Carolina Department of Corrections. Defendant Jordan Moore is the manager of the law library at the Perry Correctional Institution. Defendant Byars is the Director of the South Carolina Department of Corrections. Defendant Merchant is the mailroom director at the Perry Correctional Institution. Defendant Davis is a mailroom "designee" at the Perry Correctional Institution. Defendant Larry Cartledge is the Warden of the Perry Correctional Institution. Defendant Claytor and Defendant Maudy are Associate Wardens at the Perry Correctional Institution. Defendant Suter (whose name Plaintiff misspells as Sutter) is the Clerk of the Supreme Court of the United States. Defendant Haley is the Governor of South Carolina. Defendant Hess is an administrative assistant in the Office of the General Counsel for the South Carolina Department of Corrections. Defendant Wickensimer and Defendant Chiles are the Clerk of Court for Greenville County and Clerk of Court for McCormick County, respectively. Defendant Steven Pruitt is a private attorney in Greenwood, South Carolina. Defendant Lenski is a Judge on South Carolina's Administrative Law Court (ALC). Defendant Mahon is a South Carolina Circuit



Judge. Plaintiff also names the Greeenville County Sheriff Department's Civil Division as a defendant.

Although this case contains allegations that might be construable as prison conditions claims, the numerous exhibits appended to the Complaint reveals that this civil rights action arises out of Plaintiff's unsuccessful litigation in state and federal courts. Some of the litigation concerns Plaintiff's conviction for murder, while other litigation relates to civil claims in courts of the State of South Carolina. Plaintiff also alleges that he has been the victim of retaliatory prison transfers, has not been provided photocopies, and that Defendants have "boycotted" Plaintiff and his legal papers.

## *Discussion*

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915, 28 U.S.C. § 1915A, the Prison Litigation Reform Act, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25, 31–35 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324–25 (1989); *Haines v. Kerner*, 404 U.S. 519, 519 (1972)(*per curiam*); *Nasim v. Warden, Maryland House of Corr.*, 64 F.3d 951, 953–56 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70, 71–74 (4th Cir. 1983); *Loe v. Armistead*, 582 F.2d 1291, 1295–96 (4th Cir. 1978); and *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Further, as Plaintiff is a *pro se* litigant, his pleadings are accorded liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 90–95 (2007)(*per curiam*); *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)(*per curiam*); *Cruz v. Beto*, 405 U.S. 319, 321–23 (1972)(*per curiam*); *Merriweather v. Reynolds*, 586 F. Supp. 2d 548, 554 (D.S.C. 2008).



Even when considered under this less stringent standard, however, the undersigned finds that the Complaint is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

### Plaintiff's Conviction for Murder

Insofar as Plaintiff's claims relate to his conviction for murder, any such claims are subject to summary dismissal because a right of action has not accrued. *See Heck v. Humphrey*, 512 U.S. 477 (1994):

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. at 486–87 (footnote omitted).

It can be judicially noticed that Plaintiff has not received a favorable termination in his criminal case. *See John Roosevelt Baccus v. Stan Burtt, et al.*, Civil Action No. 0:06-1912-DCN-BM. *See also Baccus v. Burtt*, No. 07-6754, 241 Fed.Appx. 973, 2007 U.S. App.



LEXIS 22178, 2007 WL 2720408 (4th Cir. Sept. 17, 2007), *cert. denied*, 552 U.S. 1286 (2008). In any event, Plaintiff cannot obtain release from confinement in this civil rights action. *See Heck v. Humphrey*, 512 U.S. at 481 (stating that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983"); and *Johnson v. Ozmint*, 567 F. Supp. 2d 806, 823 (D.S.C. 2008) (release from prison is not a remedy available under 42 U.S.C. § 1983). Significantly, none of the named Defendants even have the authority to release Plaintiff from prison.

## Judicial Immunity

South Carolina Circuit Judge Mahon and South Carolina Administrative Law Judge Lenske are immune from suit for their judicial actions in Plaintiff's cases and appeals. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages."); *Stump v. Sparkman*, 435 U.S. 349, 351–64 (1978); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987) (a suit by South Carolina inmate against two Virginia magistrates); and *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."). *See also Siegert v. Gilley*, 500 U.S. 226, 231 (1991) (immunity presents a threshold question which should be resolved before discovery is even allowed); and *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (absolute immunity "is an immunity from suit rather than a mere defense to liability"). *Accord Bolin v. Story*, 225 F.3d 1234 (11th Cir. 2000) (discussing judicial immunity of United States District Judges and United States Circuit Judges). Moreover, it is clear that from Plaintiff's exhibits that the two judges did not act "in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 349

5



U.S. at 356–57, *citing Bradley v. Fisher*, 80 U.S. 335, 351 (1871).[2]  Therefore, Mahon and Lenske are entitled to dismissal as party Defendants.

## Quasi Judicial Immunity

As earlier stated, Plaintiff has named the Clerk of the Supreme Court of the United States (Suter), the Clerk of Court for Greenville County (Wickensimer), and the Clerk of Court for McCormick County (Chiles) as defendants.  Under cases such as *Forrester v. White*, 484 U.S. 219, 226–27 (1988), immunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aide of the judge is involved. This derivative immunity is sometimes called quasi judicial immunity in this judicial district.  *Abebe v. Propes*, Civil Action No. 0:11-1215-MBS-PJG, 2011 U.S. Dist. LEXIS 69988, 2011 WL 2581385, at *3 (D.S.C. June 3, 2011) (collecting cases), *adopted*, 2011 U.S. Dist. LEXIS 69784, 2011 WL 2600593 (D.S.C. June 29, 2011), which cites *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995); *see also Cook v. Smith*, 812 F. Supp. 561, 562 (E.D. Pa. 1993); and *Mourat v. Common Pleas Court of Lehigh County*, 515 F. Supp. 1074, 1076 (E.D. Pa. 1981).  In *Mourat v. Common Pleas Court of Lehigh County*, the district court, in a ruling from the bench, commented:

> The clerk, Joseph Joseph, is also immune from suit. In the "recognized immunity enjoyed by judicial and quasi-judicial officers, including prothonotaries, there exists an equally well-grounded principle that any public official acting pursuant to court order is also immune."  We have here quoted from *Lockhart v. Hoenstine*, 411 F.2d 455, 460 (3d Cir. 1969).  If he failed to act in

---

[2]Whether a judge's actions were taken while acting in his or her judicial capacity depends on whether: *(1)* the act complained of constituted a normal judicial function; *(2)* the events occurred in the judge's chambers or in open court; *(3)* the controversy involved a case pending before the judge; and *(4)* the confrontation arose immediately out of a visit to the judge in his or her judicial capacity. *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005).  This immunity applies even when a judge's acts are in error, malicious, or were in excess of his or her jurisdiction.  *Id.*



6

> accordance with the judicial mandate or court rule, he would place himself in contempt of court. See *Zimmerman v. Spears*, 428 F. Supp. 759, 752 (W.D.Tex.), *aff'd*, 565 F.2d 310 (5th Cir. 1977); *Davis v. Quarter Sessions Court*, 361 F. Supp. 720, 722 (E.D.Pa.1973); *Ginsburg v. Stern*, 125 F. Supp. 596 (W.D.Pa.1954), *aff'd per curiam on other grounds*, 225 F.2d 245 (3d Cir. 1955) sitting en banc.

*Mourat v. Common Pleas Court for Lehigh County*, 515 F. Supp. at 1076. *See also Dieu v. Norton*, 411 F.2d 761, 763 (7th Cir. 1969) ("Defendants Circuit Judge Cotton, court reporter Tellschow and circuit court clerk Block were all acting in the discharge of their official responsibilities[;] [a]s such they were protected by the traditional doctrine of judicial immunity, as this rule of law was not abolished by § 1983, *supra*.").

The doctrine of absolute quasi judicial immunity has been adopted and made applicable to court support personnel because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992), *quoting Scruggs v. Moellering*, 870 F.2d 376, 377 (7th Cir. 1989); *see also Ashbrook v. Hoffman*, 617 F.2d 474, 476 (7th Cir. 1980) (collecting cases on immunity of court support personnel). Therefore, these three (3) individuals are also entitled to dismissal as party defendants.

### State Court Filing Fees

It also appears that state court filing fees may be at issue with respect to Plaintiff's allegations relating to the two County Clerks of Court. Applications to proceed *in forma pauperis* in state and federal courts are governed by different statutes. In federal district courts, applications to proceed *in forma pauperis* are allowed pursuant to 28 U.S.C. § 1915, there is no waiver of the filing fee for cases filed in federal *bankruptcy* courts; *United States v. Kras*, 409 U.S. 434, 450



(1973); and in a case decided several months after *United States v. Kras*, the Supreme Court upheld

a non-waivable filing fee requirement in state court (in that case, dealing with the State of Oregon).

*Ortwein v. Schwab*, 410 U.S. 656, 658–61 (1973)(*per curiam*).

    While the Supreme Court of the United States has struck down filing fee requirements

with respect to cases involving fundamental rights; *see*, *e.g.*, *Boddie v. Connecticut*, 401 U.S. 371,

379–83 (1971) (in divorce cases, a State cannot deny access to indigents unable to pay the filing fees

because a divorce is the only way in which a marriage can be dissolved); *Little v. Streater*, 452 U.S.

1, 14–17 (1981) (Connecticut statute denying "fathers" blood grouping tests, in paternity cases,

because of indigency violates Due Process Clause of Fourteenth Amendment); *Burns v. Ohio*, 360

U.S. 252, 257–58 (1959) (state court appeals); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) (state court

appeals); and *M.L.B. v. S.L.J.*, 519 U.S. 102, 108–28 (1996) (termination of parental rights); the

above-captioned case is governed by *Ortwein v. Schwab* because the filing of a non-domestic civil

action in state court is not a "fundamental" right.  *Compare Little v. Streater*, 452 U.S at 16 n. 12

("Because appellant has no choice of an alternative forum and his interests, as well as those of the

child, are constitutionally, significant, this case is comparable to *Boddie* rather than to *Kras* and

*Ortwein*.") *with Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 464–65 (1988) (fees for school

transportation constitutional), and *Edward B. v. Paul*, 814 F.2d 52, 55–56 (1st Cir 1987).[3]

    It can be also judicially noticed that South Carolina law provides for waiver of filing

fees for domestic cases, applications for post-conviction relief, appeals in criminal cases, and appeals

in post-conviction cases.  *See Ex Parte Martin*, 321 S.C. 533, 471 S.E.2d 134, 134–35 (1995), which

---

[3]An unrelated portion of the opinion in *Edwards v. Paul*, which relates to transcripts under the Individuals with Disabilities Education Act (IDEA), has been superannuated by statute.  *Stringer v. St. James R-1 School District*, 446 F.3d 799, 804–05 (8th Cir. 2006).



is cited in *Masada v. Richstad*, Civil Action No. 7:01-3836-17BG, 2001 WL 34085201, at *3 (D.S.C. Nov. 20, 2001), *aff'd*, No. 01-8116, 33 Fed.Appx. 104, 2002 U.S.App. LEXIS 7585, 2002 WL 727292 (4th Cir. April 25, 2002); *Quillian v. Evatt*, 308 S.C. 555, 419 S.E.2d 783, 783 (1992) ("Appellant is reminded that the scope of a grant to proceed in forma pauperis extends only to those fees associated with filing the appeal and related motions with this Court. The costs of the court reporter's transcript and of copying the record and brief remain the responsibility of the appellant."); *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315, 325 (1991) (no filing fee charged for post-conviction cases); and *Ex Parte Cauthen*, 291 S.C. 465, 354 S.E.2d 381, 382–83 (1987) (no appeal fee charged for indigent litigant challenging termination of parental rights). Hence, the charging of a filing fee in non-habeas-type civil cases and court reporters' fees by courts of the State of South Carolina do not violate Plaintiff's federal constitutional rights. *Cf. Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994).

> The purpose of Mississippi's rule requiring civil litigants to prepay appellate cost [*sic*] is obvious. The prepayment of costs for a civil appeal helps Mississippi offset the expenses associated with operating its appellate court system. Thus, Mississippi's rule for civil appellate litigants is rationally justified. *See Ortwein*, 93 S.Ct. at 1175 (finding Oregon's appellate fee for civil litigants rationally justified); *United States v. Kras*, 409 U.S. 434, 93 S.Ct. 631, 638, 34 L. Ed. 2d 626 (1973) (finding that the federal bankruptcy filing fee was rational).

*Nickens v. Melton*, 38 F.3d at 185–86.

Therefore, to the extent Plaintiff is challenging the charging of such fees, his claim is subject to dismissal.



**Plaintiff's Prison Transfer**s

Plaintiff also appears to complain about being transferred within the SCDC system. However, Plaintiff's transfer from the McCormick Correctional Institution to the Perry Correctional Institution is not a constitutional violation. It is known from other cases previously decided in this judicial district that South Carolina law confers no protected liberty interest upon inmates of the South Carolina Department of Corrections from being classified, or being placed in administrative segregation, in a particular prison, or in a particular section of a prison. *See*, *e.g.*, the order of the Honorable Henry M. Herlong, Jr., United States District Judge, in *Keeler v. Pea*, 782 F. Supp. 42, 43–44 (D.S.C. 1992), which cites *Meachum v. Fano*, 427 U.S. 215 (1976); *see also Vice v. Harvey*, 458 F. Supp. 1031, 1034 (D.S.C. 1978). In fact, it is well settled that the placement of inmates into administrative segregation units or similar units is a valid of means of minimizing a "threat to security of the institution, threat to the safety of other residents or Jail staff, etc." *Jackson v. Bostick*, 760 F. Supp. 524, 528 (D. Md. 1991); *see also McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");[4] *Montanye v. Haymes*, 427 U.S. 236, 242 (1976) (if a prisoner's confinement is within terms of the sentence imposed upon him and does not violate other constitutional provisions, "the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight"); and *Isgrigg v. CDC*, No. C 06-07618 JW (PR), 2008 U.S. Dist.

---

[4]Unrelated portions of the holding in *Hewitt v. Helms* have been superannuated by later case law. This portion of the holding in *Hewitt v. Helms* has not been superannuated by later case law.



LEXIS 117092, 2008 WL 754892, at *2 (N.D. Cal. March 20, 2008) ("A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him, or not transfer him in the case of plaintiff, to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution"). Hence, this claim is without merit and subject to dismissal..

### Plaintiff's Access to Photocopies

Plaintiff also appears to be contending that, because he is indigent, he should be provided free photocopies by the South Carolina Department of Corrections. However, although Plaintiff has *in forma pauperis* status in this case under 28 U.S.C. § 1915, his *in forma pauperis status* applies to the filing fee only and does not extend to other litigation costs. *Badman v. Stark*, 139 F.R.D. 601, 603-604 (M.D. Pa. 1991). In other words, Plaintiff's indigent status does not entitle him to free photocopies.

From the time this Court implemented the CM-ECF system in February of 2005, prisoners have not be required to submit copies of their complaints or petitions. If a non-habeas civil case filed by a prisoner is served in this judicial district, the CM-ECF system generates the service copies and includes "headers" indicating that the document is an officially-filed court document. Moreover, in habeas cases that are served, service of a petition is often made electronically. Hence, Plaintiff's federal court litigation has not been impeded by his inability to obtain photocopies of his pleadings. *Cf. Michau v. Charleston Cnty., S.C.*, 434 F.3d 725, 728 (4th Cir. 2006) (in access to court claim, inmate must allege and show that he has suffered an actual injury or specific harm to his litigation efforts as a result of the defendant's actions).



### Plaintiff's Prison Food

With respect to Plaintiff's complaint about his food, it is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it. *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). However, assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. *See Divers v. Dep't of Corrs.*, 921 F.2d 191, 196 (8th Cir. 1990); *Madyun v. Thompson*, 657 F.2d 868, 874–75 (7th Cir. 1981) (allegation that food served to segregated prisoners was cold and not on the menu served to general prison population was insufficient to state an Eighth Amendment violation); *Hoitt v. Vitek*, 497 F.2d 598, 601 (1st Cir. 1974) (prisoners' allegation of deprivation of hot meals failed to state a claim of cruel and unusual punishment, given the stipulation that three meals were provided daily); and *Prophete v. Gilless*, 869 F. Supp. 537, 538 (W.D. Tenn. 1994) (food which was cold by the time it was served did not constitute cruel and unusual punishment), which are cited in *McFadden v. Butler*, Civil Action No. 3:10-3104-JMC-JRM, 2012 U.S. Dist. LEXIS 34367, 2012 WL 847754, at *4 (D.S.C. Feb. 6, 2012), *adopted*, 2012 U.S. Dist. LEXIS 33095, 2012 WL 847273 (D.S.C. March 13, 2012).

Plaintiff's assertions relating to his prison food do not establish a plausible constitutional claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951–52 (2009). The fact that Plaintiff's meals are not always served hot does not in and of itself state a constitutional claim. The intermittent presence of foreign objects, such as a strand of hair, in food is also not a constitutional violation. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("[t]he fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."), which is cited in *Canady v. Johnson*, No. 3:12-cv-209-RJC, 2012



WL 2394867, at *2 (W.D.N.C. June 25, 2012). *See also Blakely v. Wards*, Civil Action No. 4:10-718-RMG-TER, 2011 U.S. Dist. LEXIS 70280, 2011 WL 2559601, at *3–*4 (D.S.C. May 10, 2011) (rejecting constitutional claim based on fact that prison food service workers did not wear hair nets), *adopted*, *Blakely v. Ozmint*, 2011 U.S. Dist. LEXIS 70218, 2011 WL 2559536 (D.S.C. June 28, 2011); *Reed v. Olson*, Civil Action No. 4:09-3126-JFA-TER, 2011 U.S. Dist. LEXIS 18289, 2011 WL 765559, at *4 (D.S.C. Jan. 19, 2011) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."), *adopted*, 2011 U.S. Dist. LEXIS 18257, 2011 WL 742509 (D.S.C. Feb. 24, 2011); and *Lamb v. Lieber Corr. Inst. Kitchen Staff*, Civil Action No. 8:09-1805-CMC-BHH, 2009 U.S. Dist. LEXIS 71452 and 2009 U.S. Dist. LEXIS 71447, 2009 WL 2513500, at *2–*3 (D.S.C. Aug. 13, 2009) (collecting cases). Plaintiff's general and conclusory claims that his food is otherwise bad or "tainted" does not state a plausible constitutional claim. *House v. New Castle County*, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Therefore, Plaintiff's complaints about the quality of his food are subject to dismissal.

### The Greenville County Sheriff's Department

Plaintiff has named the "civil division" of the Greenville County Sheriff's Department as a Defendant. Sheriff's Departments in South Carolina are state agencies, not municipal departments. *See* S.C. Code Ann. § 23-13-550 (Westlaw 2012); 1975 S.C.Att'y.Gen'l.Op. No. 47 (Jan. 22, 1975); and S.C. Code Ann. § 23-13-10 (Westlaw 2012), which provides that only the Sheriff has the authority to hire or terminate employees of the Sheriff's Department, and that the Sheriff is responsible for neglect of duty or misconduct by a deputy sheriff. *See also Edwards v.*



*Lexington Cnty. Sheriff's Dep't*, 386 S.C. 285, 287 n. 1, 688 S.E.2d 125, 127 n.1 (2010) ("However, under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees."); *Allen v. Fid. and Deposit Co.*, 515 F. Supp. 1185, 1189–91 (D.S.C. 1981) (County cannot be held liable for actions of deputy sheriff because deputy sheriffs serve at pleasure of the Sheriff, not the County), *aff'd*, 694 F.2d 716 (4th Cir. 1982) [Table]; and *Comer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (suit against Sheriff of Greenville County: ". . . Sheriff Brown is an arm of the State."). Indeed, any damages to Plaintiff, if awarded in this case, would be paid by the South Carolina State Insurance Reserve Fund. *Comer v. Brown*, 88 F.3d at 1332 ("Judgments against the Greenville County Sheriff are paid by the South Carolina State Insurance Reserve Fund.").

As a state agency, the Greenville County Sheriff's Department cannot be sued in this Court in a § 1983 action. *Dean v. Barber*, 951 F.2d 1210, 1215 n. 4 (11th Cir. 1992)[a county sheriff's department is not a proper defendant in a § 1983 action because state law did not allow it to be sued]; *Snead v. Alleghany Sheriff Dep't*, No. 09-198, 2009 WL 2003399 at * 1 (W.D.Va. July 7, 2009)["Because Eleventh Amendment immunity extends to [ ] Sheriff's Department, [Plaintiff] has not stated a proper Defendant for §1983 purposes."]; *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984); *Will v Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Brooks-McCollum v. Delaware*, 213 Fed.Appx. 92, 94 (rd Cir. 2007); *Metz v. Supreme Court of Ohio*, 45 Fed.Appx. 228, 236, 237 (6th Cir. 2002); *see also Coffin v. South Carolina Dep't of Social Services*, 562 F.Supp. 579, 583-585 (D.S.C. 1983); *Belcher v. South Carolina Board of Corrections*, 460 F.Supp. 805, 808-809 (D.S.C. 1978). Therefore, this Defendant is entitled to summary dismissal.



**Plaintiff's Unsuccessful Cases in State Court**

The 142 pages of exhibits appended to the Complaint (ECF No. 1-2) indicate that Plaintiff has sued some of the named Defendants in Courts of Common Pleas. Although Plaintiff has not provided complete case details, it appears that at least one of Plaintiff's state court cases, *John Baccus v. Cartledge, et al.*, Case No. 2011-CP-35-0063,[5] was decided adversely to Plaintiff on May 18, 2012 (ECF No. 1-2, at pages 7–26). In any event, this federal court cannot review decisions of Courts of Common Pleas issued in non-habeas-type civil cases. Longstanding precedents preclude the United States District Court for the District of South Carolina from reviewing the findings or rulings made by state courts in civil cases. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983), where the Supreme Court of the United States held that a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257. *See also Rooker v. Fid. Trust Co.*, 263 U.S. 413, 414–17 (1923).

This prohibition on review of state court proceedings or judgments by federal district courts is commonly referred to as the *Rooker-Feldman* doctrine or the *Feldman-Rooker* doctrine. The *Rooker-Feldman* doctrine applies even if the state court litigation has not reached a State's highest court. This principle was reaffirmed in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 290–94 (2005) (*Rooker-Feldman* doctrine applies only when the loser in state court suit files suit in federal district court seeking redress for an injury allegedly caused by the state court's

---

[5]Plaintiff was previously confined at the McCormick Correctional Institution, whose Warden is *Leroy* Cartledge. Plaintiff's is now confined at the Perry Correctional Institution, whose Warden is *Larry* Cartledge. See http://www.doc.sc.gov/institutions/institutions.jsp (last visited on Sept. 18, 2012).



decision itself). *See also Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 716–21 (4th Cir. 2006). Therefore, any such claims are subject to dismissal.

### Attorney Steven Pruitt

It is not clear from the Complaint what role Steven Pruitt of Greenwood played in Plaintiff's cases, although one of Plaintiff's exhibits indicates that Mr. Pruitt represented Warden L. Cartledge and Warden Lewis A. Scott in *John Baccus v. Cartledge, et al.*, Case No. 2011-CP-35-0063, which was dismissed by the Honorable William P. Keesley, South Carolina Circuit Judge in an order dated May 18, 2012 (ECF No. 1-2, at pages 7–26). In any event, Steven Pruitt is entitled to summary dismissal as a party defendant because he has not acted under color of state law.

In order to state a cause of action under 42 U.S.C. § 1983 or under the *Bivens* doctrine, a plaintiff must allege that: *(1)* the defendant deprived him or her of a federal right, and *(2)* did so under color of state law or federal law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50–52 (1999). An attorney, whether retained, court-appointed, or a public defender, does not act under color of state or federal law, which is a jurisdictional prerequisite for any civil action brought under 42 U.S.C. § 1983 or under the *Bivens* doctrine. *See Polk Cnty. v. Dodson*, 454 U.S. at 317–24 (public defender); *Hall v. Quillen*, 631 F.2d 1154, 1155–56 (4th Cir. 1980) (court-appointed attorney); and *Deas v. Potts*, 547 F.2d 800, 800 (4th Cir. 1976) (private attorney). "[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk Cnty. v. Dodson*, 454 U.S. at 318.

16



**Plaintiff's Prison Conditions**

With respect to Plaintiff's remaining complaints, the non-SCDC Defendants are not responsible for the conditions at Plaintiff's prison, including the food or mail service. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a respondeat superior theory of liability.") (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 927–29 (4th Cir. 1977); and *Smith v. Beasley*, Civil Action Nos. 0:07-1641-HFF-BM and 0:07-1642-HFF-BM, 2007 U.S. Dist. LEXIS 54010, 2007 WL 2156632, at *2 (D.S.C., July 25, 2007) (adopting magistrate judge's Report and Recommendation, which cites *Horton v. Marovich*, 925 F. Supp. 540, 543 (N.D. Ill. 1996)).[6]  Although it appears that Plaintiff is also seeking to bring suit against persons connected with his criminal case or current post-conviction litigation, Plaintiff's rationale for bringing suit against named Defendants and the other persons  for whom Plaintiff provided summonses is based on an invalid deduction of fact, which is best articulated in the maxim "*Post hoc, ergo propter hoc.*"  This maxim is usually translated as "After this, therefore, on account of this."  Most federal courts have rejected the validity of that maxim in determining whether a causal connection exists between events. *See, e.g.*, the order of the Honorable Charles E. Simons, Jr., United States District Judge, in *Orr v. Gardner*, 261 F. Supp. 39, 41 n. 1 (D.S.C. 1966) ("*Post hoc, ergo propter hoc* in logic is usually intended as 'the fallacy of arguing

---

[6]In addition to the named Defendants, Plaintiff has also submitted summonses and Forms USM-285 for persons not listed in the caption of the Complaint or in the party information section of the Complaint.  Those persons include an employee of the McCormick County Clerk of Court office (Buffy Shorter), a court reporter in McCormick County, Chief Justice Jean Toal of the Supreme Court of South Carolina, three Assistant (South Carolina) Attorney Generals, South Carolina Attorney General Alan Wilson, Chief Deputy Attorney General John McIntosh, a South Carolina Administrative Law Judge, and other employees of the South Carolina Department of Corrections.



from mere temporal sequence to cause and effect relationship.'"; and *Loyd v. Bullhead City*, No. 89-16652, 931 F.2d 897 [Table], 1991 U.S.App. LEXIS 9824, 1991 WL 70735, at *6 (9th Cir. May 6, 1991), where the United States Court of Appeals for the Ninth Circuit commented: "Loyd's argument presents a classic example of the logical fallacy known as *post hoc, ergo propter hoc*, *i.e.*, that a cause-and-effect relationship can be shown from a mere temporal sequence."

Although a district court, when evaluating a pleading under 28 U.S.C. § 1915, must assume that the allegations in the pleading are true, a district court is not required to accept unwarranted deductions of fact. *See Gersten v. Rundle*, 833 F. Supp. 906, 910 (S.D. Fla. 1993); and *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994) (district court not required to accept conclusions that cannot be reasonably drawn from facts alleged); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (district court "not required to 'accept as true legal conclusions or unwarranted factual inferences'"); *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 192 (4th Cir. 1998); *cf. Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). Therefore, these non-SCDC defendants are entitled to dismissal of any such claims.

As for Plaintiff's complaints concerning his imprisonment (other than those already discussed) which may relate to the prison official Defendants, Plaintiff is in prison because he was convicted of the murder of his former girlfriend, Brenda Kay Godbolt. *State v. Baccus*, 367 S.C. 41, 625 S.E.2d 216 (2006). Plaintiff's prior habeas corpus action was decided adversely to Plaintiff, and there is no indication that Plaintiff has sought leave from the Court of Appeals to file a successive petition in this district court. Statutory law and case law barring successive post-conviction



applications and successive habeas corpus petitions and statutory filing fees for non-habeas civil

actions do not constitute a "boycott" of Plaintiff or his legal papers. *See NAACP v. Claiborne*

*Hardware Co.*, 458 U.S. 886, 911 (1982) ("In sum, the boycott clearly involved constitutionally

protected activity."); and *Atl. Group Ltd. v. The Interpublic Group of Cos., Inc.*, No. 00 Civ.

7845(KMW), 2007 U.S. Dist. LEXIS 51458, 2007 WL 2049728, at \*3 n. 2 (S.D.N.Y. July 16, 2007)

("Defendants' version comports with the primary definition of 'boycott' in English, which is '[t]o

abstain from using, buying, or dealing with to express protest or to coerce.' *Webster's II New*

*Riverside University Dictionary* 195 (1994).").[7]

  Plaintiff's other general and conclusory claims relating to the prison (other than those

already discussed), such as that his cell is too cold or too hot, that he does not like being searched

or having his cell searched, and other such claims, also fail without more to state a plausible claim

for constitutional violation or relief. Since the date on which Plaintiff was sentenced to serve a life

term for murder, he has been housed at his various prisons where, one could assume, the general

conditions have not been pleasant. That is not, however, grounds for a constitutional claim. *See*

*Atiyeh v. Capps*, 449 U.S. 1312, 1315–16 (1981) (The Eighth Amendment does not require that

prisoners "be housed in a manner most pleasing to them, or considered even by most knowledgeable

penal authorities to be likely to avoid confrontations, psychological depression, and the like."), which

was a stay of a district court's order entered by Justice Rehnquist in his capacity as a Circuit Justice;

*cf. Sandin v. Conner*, 515 U.S. 472, 481 (1995) (due process clause offended only when inmate

subjected to atypical and significant hardships in relation to ordinary incidents of prison life).

---

[7]Most recent cases defining "boycott" concern matters under the McCarran-Ferguson Act, *see Anglin v. Blue Shield of Virginia*, 693 F.2d 315, 321–22 (4th Cir. 1982), which is obviously not applicable in the above-captioned case.



*Lunsford v. Bennett,* 17 F.3d 1574, 1581 (7th Cir. 1994); *Hadley v. Peters*, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)).  Therefore, these claims should be dismissed.

### *Recommendation*

Based on the foregoing, the undersigned finds that Plaintiff has failed to set forth a plausible claim against any named Defendant.  *Cf. Iqbal*, 556 U.S. 662, 129 S.Ct. at 1951–52.  Accordingly, it is recommended that the Court dismiss the above-captioned case *without prejudice* and without service of process.  *See Denton v. Hernandez*; *Neitzke v. Williams*; *Brown v. Briscoe*, 998 F.2d 201, 202–04 (4th Cir. 1993); 28 U.S.C. § 1915(e)(2)(B) [essentially a redesignation of "old" § 1915(d)]; and 28 U.S.C. § 1915A [as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal].

Plaintiff's attention is directed to the Notice on the next page.

_____
Bristow Marchant
United States Magistrate Judge

September 21, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

Plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk of Court**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

